IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KOHEN DIALLO E. UHURU, | No. 2:23-CV-0200-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| WALTERS, et al., | |
| Defendants. | |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's original complaint, ECF No. 1.

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody.  See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply,

concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner at California Medical Facility (CMF) in Vacaville, California. See ECF No. 1 at 1. Except for Defendant Kathleen Allison, each Defendant was an employee at Mule Creek State Prison, where the alleged violations occurred. Id. at 3-4. Plaintiff names the following as defendants: (1) Walters, sergeant; (2) Patrick Covello, warden; (3) Laura Forsterer, chief of mental health; (4) M. Banks, lieutenant; (5) Dawn Santos, litigation coordinator; (6) Lance Eshelman, community resource manager; (7) J. Sunderland, guard; (8) W. David Smiley, chief executive officer; (9) E. Gibson, custody case worker; (10) B. Stacy, chief deputy warden; (11) S. Gates, chief; (12) H. Parks, chief psychologist; (13) Johnson, senior psychologist supervisor; (14) Spaulding, guard or sergeant; (15) K. Rogers, guard or captain; (16) E. Alwazani, guard or lieutenant; (17) Bailey, psychologist; (18) A. Cooper, ADA custody case worker; (19) J. Bordewick, guard or sergeant; (20) Reynolds, sergeant; (21) M. Delgadillo, custody case worker; (22) Kathleen Allison, secretary for California Department of Corrections and Rehabilitation and; (23-27) John and Jane Does on the Religious Review Committee.

Plaintiff alleges that his freedom to exercise his religion was restricted because his request for solitary in-cell worship was denied. Id. at 5. Plaintiff states:

> in-cell worship is required as a 'priest' to avoid and eliminate all coprophili [sic] and also voyeurism from homosexuals, sodomites, bisexuals, gay queers and trans whatever. Nubian Hebrew Israelite religion mandates cell separation by avoiding placement of our holy temples within our holy sanctuary called a 'cell' to be contaminated by another male that dwells in a cell designed for only one individual by retraining 'common law marriage' while mating themselves in

> situations that is [sic] designed to encourage illegal sexual gratification, obscenities, and immorality within a civilized society.

Id.

Plaintiff believes Defendants discriminated against him because of his "physical and mental handicap, political belief, nationality and age, whereby Plaintiff's credible threats to kill any homosexual, transgender, bisexual, weirdo's [sic] and sodomites are an abomination to Plaintiff's religious beliefs . . . ." Id. Plaintiff alleges he was retaliated against with false assessments of being delusional. Id. He also claims he is subject to staff assaults and denied sunlight because of his religious beliefs. Id. Prison staff retaliate against Plaintiff's requests for time and space within the chapels for group prayers with relocations and involuntary transfers. Id.

Plaintiff's second claim focuses largely on Defendant Sunderland, a guard. Sunderland refused to wear a Covid mask, putting Defendant's life at risk. Id. at 6. Sunderland also prevented Plaintiff from maintaining holy heaven books and a prayer tallith. Id. Sunderland denied Plaintiff his legal property, which denied Plaintiff's access to the courts. Id. Sunderland was part of a conspiracy to use illegal quarantines to deny Plaintiff basic necessities including outdoor exercise, fresh air, and sunlight. Id.

The complaint next discusses Defendant Walters, a sergeant. Id. Defendant Walters wrote a rules violation against Plaintiff because he suffers from permanent incontinence. Id. Plaintiff contends that "Sergeant Ms. Walters has a history of violating Plaintiff's ADA rights." Id. at 6. Plaintiff alleges that Defendant Walters did not allow "Plaintiff to maintain his durable medical equipment (DME's) within his cell or even a temporary wheelchair that [was] available within the housing unit" and that Plaintiff "suffered injuries when not allowed to sit in his permanent medical walker." Id.

Plaintiff next complains that he was denied medical supplies of diapers. Id. Once, he was put in a mental health crisis bed even though he was not suicidal. Id. He was erroneously quarantined, which exposed him to lint, dust, and airborne pathogens from the jail ventilation system. Id.

Plaintiff contends that Defendants Covello, Eshelman, Smiley, Parks, and Johnson "[t]hrough policies, decisions, actions, and conditions with omissions" have had a "material adverse effect on Plaintiff's health and wellbeing." Id. at 7. He states these defendants "conspired" with Defendant Gibson, Defendant Delgadillo, Defendant Wess, Defendant Bailey, and Defendant Cooper, and told Plaintiff that "he could only choose one of his mental illnesses to be treated." Id. Plaintiff alleges that he has been "denied mental health chronos from other prisons to dwell in a single cell since 2004 due to being psychologically incapable of ever double cell living nor dorm living." Id.

Finally, Plaintiff alleges that Defendant Alliston improperly denied Plaintiff his requested kosher meals card. Id.

## II. DISCUSSION

The Court finds:

1. Plaintiff's religious practice claims regarding the denial of prayer materials and a kosher meals card are cognizable.

2. Plaintiff's religious practice claim regarding single-cell worship is not cognizable.

3. Plaintiff also presents cognizable retaliation claims.

4. Plaintiff's equal protection claims are not cognizable because Plaintiff does not distinguish how he was treated from how similarly situated individuals were treated.

5. Plaintiff's conditions of confinement claim is not cognizable because he does not show how he was harmed other than that he was uncomfortable with prison staff's choices.

6. Plaintiff's medical needs claim is not cognizable because he does not plead Defendants acted unnecessarily and wantonly for the purpose of inflicting harm.

7. Plaintiff's ADA claim is not cognizable because he does not plead a disability connected to the alleged harm.

8. Plaintiff fails to establish causal links for Defendants Forsterer, Banks, Santos, Stacy, Gates, Spaulding, Rogers, Alwazani, Bordewick, and Reynolds sufficient to establish claims against them.

///

The various defects identified are discussed below.  Plaintiff will be given leave to amend.

### A.  Religious Practice

The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus, for example, prisoners have a right to be provided with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion.  See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state expense.  See id.  Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives.  See McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments.  See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

While free exercise of religion claims originally arose under the First Amendment, Congress has enacted various statutes in an effort to provide prisoners with heightened religious protection.  See Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005).  Prior to these congressional efforts, prison free exercise claims were analyzed under the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987); see e.g. O'Lone, 382 U.S. at 349.  The first effort to provide heightened protection was the Religious Freedom Restoration Act (RFRA)

of 1993.  However, the Supreme Court invalidated that act and restored the "reasonableness test." See City of Boerne v. P.F. Flores, 521 U.S. 507 (1997); see also Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (recognizing that the United States Supreme Court's decision in City of Boerne invalidated RFRA and restored the "reasonableness test" as the applicable standard in free exercise challenges brought by prison inmates).

Congress then enacted the Religious Land Use and Institutionalized Persons Act (RLUIPA) in 2000 ". . . in response to the constitutional flaws with RFRA identified in City of Boerne."  Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006).  Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest.  See id. at 986.  RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'"  Warsoldier, 418 F.3d at 994 (quoting Cutter v. Wilkinson, 125 S.Ct. 2113, 2117 (2005)).  Congress achieved this goal by replacing the "reasonableness test" articulated in Turner with the "compelling government interest" test codified in RLUIPA at 42 U.S.C. § 2000cc-1(a).  See id.

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard.  In Alvarez v. Hill, the Ninth Circuit held that, if a complaint contains "factual allegations establishing a 'plausible" entitlement to relief under RLUIPA, [plaintiff has] satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure."  518 F.3d 1152, 1157 (9th Cir. 2008); but see Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only).  Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and RLUIPA claim based on the same factual allegations.  In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled to them.  Under Henderson, however, the plaintiff's claim may be limited

to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith. See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA). While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive. See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context). To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct ". . . burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987). The burden must be more than a mere inconvenience. See id. at 851. In the context of claims based on religious diets, a plaintiff must prove that prison officials refused to provide a diet which satisfies his religious dietary laws or that the available prison menu prevented him from adhering to the religious dietary laws mandated by his faith. See Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995).

Under the First Amendment "reasonableness test," where the inmate shows a substantial burden the prison regulation or restriction at issue is nonetheless valid if it is reasonably related to a legitimate penological interest. See Shakur v. Schriro, 514 F.3d 878, 884 (9th Cir. 2008) (citing Turner, 482 U.S. at 89). In applying this test, the court must weight four factors: (1) whether there is a rational connection between the regulation or restriction and the government interest put forward to justify it; (2) whether there are available alternative means of exercising the right; (3) whether accommodation of the asserted religious right will have a detrimental impact on prison guards, other inmates, or the allocation of limited prison resources; and (4) whether there exist ready alternatives to the regulation or restriction. See id.; see also Allen v. Toombs, 827 F.2d 563, 567 (9th Cir. 1987).

Under RLUIPA, the government is required to ". . . meet the much stricter burden of showing that the burden it imposes on religious exercise is 'in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" Green v. Solano County Jail, 513 F.3d 992, 986, 989 (9th Cir. 2008) (citing 42 U.S.C. § 2000cc-1(a)(1)-(2) and 2(b)); see also Warsoldier, 418 F.3d at 994-95. Prison security is an example of a compelling governmental interest. See Green, 513 F.3d at 989 (citing Cutter, 125 S.Ct. at 2113 n.13). In establishing that the regulation or restriction is the least restrictive means to achieve a compelling governmental interest, prison officials must show that they actually considered and rejected the efficacy of less restrictive means before adopting the challenged practice. See Green, 513 F.3d at 989 (citing Warsoldier, 418 F.3d at 999).

Plaintiff claims that his religious freedom is restricted because he shares a cell, which denies him solitary in-cell worship. See ECF No. 1 at 5. Plaintiff believes that his religion mandates cell separation. Id.

For Plaintiff to plead a cognizable claim under RLUIPA, he must plead that Defendants placed a substantial burden on religious exercise that is not in furtherance of a compelling government interest or that there is a lesser restrictive means to accomplish that interest that avoids placing the burden. See Green, 513 F.3d at 989. Plaintiff does not do so. Even if sharing a cell constitutes a substantial burden, the burden is in furtherance of a compelling government interest. See Cutter, 125 S.Ct. at 2115 ("the Act does not elevate accommodation of religious observances over an institution's need to maintain order and safety."); Walker v. Beard, 789 F.3d 1125, 1136 (9th Cir. 2015) (noting many possible justifications might exist for the refusal to exempt an inmate from integrated celling.). Defendants have a compelling interest in ordering their prisoners, which includes choosing which prisoners share cells.

Plaintiff also pleads that Defendant Sunderland denied Plaintiff holy heaven books and a prayer tallith. ECF No. 1 at 6. There is no apparent compelling government interest for denying such prayer materials. The alleged denial of these materials presents a substantial burden, so Plaintiff pleads a cognizable claim for the denial of those materials.

///

Defendant Allison, Secretary of CDCR, denied Plaintiff a kosher meals card. ECF No. 1 at 7. There is similarly no apparent compelling government interest in denying the request for a kosher meals card, and the denial places a substantial burden on Plaintiff's religious exercise. Plaintiff presents a cognizable claim based on the denial of his kosher meals card.

### B. Equal Protection

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline. See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Harrison v. Kernan, 971 F.3d 1069 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

///

Plaintiff claims he was discriminated against because of his physical and mental handicap, political beliefs, nationality, and age. ECF No. 1 at 5. Plaintiff describes how he was retaliated against and mistreated. See id. Plaintiff does not differentiate how he was treated from others who were similarly situated. See id. A cognizable equal protection claim requires Plaintiff show how he was treated differently because of his membership in a class. Gallinger v. Becerra, 898 F.3d 1012, 1016 (9th Cir. 2018) (explaining the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."). Because Plaintiff does not show how other similarly situated individuals were treated differently, he does not present a cognizable claim.

### C. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

As to the chilling effect, the Ninth Circuit in Rhodes observed: "If Rhodes had not alleged a chilling effect, perhaps his allegations that he suffered harm would suffice, since harm that is more than minimal will almost always have a chilling effect." Id. at n.11. By way of example, the court cited Pratt in which a retaliation claim had been decided without discussing

1  chilling.  See id.  This citation is somewhat confusing in that the court in Pratt had no reason to
2  discuss chilling because it concluded that the plaintiff could not prove the absence of legitimate
3  penological interests.  See Pratt, 65 F.3d at 808-09.  Nonetheless, while the court has clearly
4  stated that one of the "basic elements" of a First Amendment retaliation claim is that the adverse
5  action "chilled the inmates exercise of his First Amendment rights," id. at 567-68, see also
6  Resnick, 213 F.3d at 449, the comment in Rhodes at footnote 11 suggests that adverse action
7  which is more than minimal satisfies this element.  Thus, if this reading of Rhodes is correct, the
8  chilling effect element is essentially subsumed by adverse action.

9  Plaintiff claims he was retaliated against for his religious beliefs.  ECF No. 1 at 5-
10 6.  The retaliation included false assessments of delusion, being denied sunlight and fresh air, and
11 assaults by staff.  When Plaintiff requested time within the chapels for group prayers, he was
12 relocated and transferred against his will.  Id. at 5.  He was also denied the use of his durable
13 medical equipment and diapers.  Id. at 6.  Defendant Walters found Plaintiff guilty of a rules
14 violation due to his incontinence.  Id. at 6.  Finally, Plaintiff was subjected to "erroneous"
15 quarantines.  Id. at 6.

16 Plaintiff presents a cognizable retaliation claim by pleading that adverse action
17 was taken against him for his religious practice, a protected right, and that the adverse action was
18 not related to a legitimate penological purpose.

19 **D.  Conditions of Confinement**

20 "The Constitution 'does not mandate comfortable prisons.'"  Farmer, 511 U.S. at
21 832 (quoting Rhodes, 452 U.S. at 349); see also Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir.
22 2002); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), abrogated on other grounds by
23 Sandin v. Conner, 515 U.S. 472 (1995).  Conditions of confinement may, consistent with the
24 Constitution, be restrictive and harsh.  See Rhodes, 452 U.S. at 347; Morgan v. Morgensen, 465
25 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v.
26 Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc).  Prison officials must, however, provide
27 prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint,
28 801 F.2d at 1107; see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Wright v.

Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. "Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991); see also Thomas v. Ponder, 611 F.3d 1144, 1151 (9th Cir. 2010); Osolinski, 92 F.3d at 938-39; Toussaint, 801 F.2d at 1107; Wright, 642 F.2d at 1133. When considering the conditions of confinement, the court should also consider the amount of time to which the prisoner was subjected to the condition. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

Plaintiff complains that he met with prison staff who did not use masks to protect Plaintiff from Covid. ECF No. 1 at 6. Plaintiff does not allege that this resulted in him contracting Covid or that any of the defendants had Covid when interacting with Plaintiff. See id. Plaintiff's only apparent harm was that he was uncomfortable with Defendants not wearing their masks. See id. However, mere discomfort over defendants' choices is insufficient to state a cognizable claim. See Farmer, 511 U.S. at 832.

### E. Medical Needs

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with

"food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See

1  Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate
2  that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

3  Negligence in diagnosing or treating a medical condition does not, however, give
4  rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a
5  difference of opinion between the prisoner and medical providers concerning the appropriate
6  course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,
7  90 F.3d 330, 332 (9th Cir. 1996).

8  Plaintiff alleges Defendants engaged in a conspiracy to deny Plaintiff medical
9  attention for his health and wellbeing.  Id. at 7.  Defendants told Plaintiff that only one of his
10  many mental illnesses could be treated.  Id.  Defendants also denied Plaintiff mental health
11  chronos, which had been available at previous prisons.  Id.

12  To present a cognizable claim, a plaintiff must allege Defendants acted
13  unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.
14  Plaintiff does not do so.  ECF No. 1 at 7.  Here no such facts are alleged. Plaintiff does not plead
15  a cognizable medical needs claim.

16  **E. ADA Claim**

17  Title II of the ADA covers state prison inmates.  Pennsylvania Dep't of Corr. v.
18  Yeskey, 524 U.S. 206, 213 (1998).  To present an ADA claim, an inmate must show: (1) they are
19  an individual with a disability; (2) they are qualified to participate in or receive the benefit of
20  some public entity's services, programs, or activities; (3) they were either excluded from
21  participation in or denied the benefits of the public entity's services, programs, or activities, or
22  was otherwise discriminated against by the public entity; and (4) such exclusion, denial of
23  benefits, or discrimination was by reason of their disability. Simmons v. Navajo County, Ariz.,
24  609 F.3d 1011, 1021 (9th Cir. 2010) overruled in part on other grounds by Castro v. County of
25  Los Angeles, 833 F.3d 1060 (9th Cir. 2016).
26  / / /
27  / / /
28  / / /

For the purposes of the ADA, a disability is a physical or mental impairment that substantially limits one or more major life activities. Weaving v. City of Hillsboro, 763 F.3d 1106, 1111 (9th Cir. 2014). To qualify, a disability must limit the ability of an individual to perform a major life activity as compared to most people in the general population. See Shields v. Credit One Bank, N.A., 32 F.4th 1218, 1226 (9th Cir. 2022). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. (citing 42 U.S.C. § 12102(2)(A)).

To be cognizable, a Title II claim for compensatory damages must allege that Defendants were deliberately indifferent to Plaintiff's need for accommodation. See Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001). To show deliberate indifference, Plaintiff must have provided notice to Defendants by identifying specific reasonable and necessary accommodations. Id. (citing Memmer v. Marin County Courts, 169 F.3d 630, 633 (9th Cir.1999)). But providing notice is unnecessary if the need for accommodation is "obvious" or is required by statute or regulation. Id. Plaintiff must also allege that once notice was provided, Defendants failed to "undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." Id. Upon receiving notice, Defendants "have a duty to gather sufficient information from [Plaintiff] and qualified experts as needed to determine what accommodations are necessary." Id. (citing Wong v. Regents of the University of California, 192 F.3d 807, 818 (9th Cir.1999). Ultimately, the "failure to act must be a result of conduct that is more than negligent[] and involves an element of deliberateness." Id.

Plaintiff states he was denied the ability to maintain his durable medical equipment or the use of a temporary wheelchair. ECF No. 1 at 6. He was also not allowed to sit in his permanent medical walker, which led to injury. Id.

///

///

///

For Plaintiff's claim to be cognizable, he must first establish that he has a qualifying disability. See Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) overruled in part on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060 (9th Cir. 2016). He does not describe any disability that may necessitate the use of his durable medical equipment or a wheelchair. See ECF No. 1 at 7. Plaintiff does not plead a cognizable claim.

### F. Causal Links

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Defendants Forsterer, Banks, Santos, Stacy, Gates, Spaulding, Rogers, Alwazani, Bordewick, and Reynolds are not mentioned in the body of Plaintiff's complaint. See ECF No. 1. To be held liable, these defendants must be specifically connected to the claims in the complaint.

### III. CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An

amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated:  August 18, 2023

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE